UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

```
DAVID L. GREENING,              )
                                )
             Plaintiff,         )   NO. CV-04-5060-MWL
                                )
     v.                         )   ORDER GRANTING DEFENDANTS'
                                )   MOTION FOR SUMMARY JUDGMENT
CRISWELL A. KENNEDY and DEBBIE  )
CLINTON,                        )
                                )
             Defendants.        )
_____)
```

On December 1, 2004, the parties consented to proceed before a magistrate judge. (Ct. Rec. 14.) The defendants moved for summary judgment on May 31, 2005. (Ct. Rec. 31.) On June 20, 2005, plaintiff filed a response and cross motion. (Ct. Rec. 39.) The defendants filed their response on June 27, 2005. (Ct. Rec. 44.) On July 7, 2005, plaintiff filed his reply. (Ct. Rec. 46.) The matter came before the undersigned magistrate judge on July 20, 2005, without oral argument.

The matters now before the Court are the parties' cross motions for summary judgment of plaintiff's §1983 civil rights claims. Both defendants seeks summary judgment alleging that: 1) Dr. Kennedy did not act with deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment, and 2) the defendants are entitled to qualified immunity. (Ct.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 1

Rec. 32 at 3; 18.) Plaintiff responds that Dr. Kennedy failed to provide proper treatment for his Crohn's disease and back pain, and as the health care manager at AHCC, Debbie Clinton failed to insure that Dr. Kennedy provided proper medical treatment. (Ct. Rec. 40 at 1; 3-10.) On this basis plaintiff asks the Court to grant his cross motion for summary judgment as to his Eight Amendment claim. (Ct. Rec. 40 at 4; 6-10.)

## I. Summary Judgment

When considering a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Freeman v. Arpaio*, 125 F. 3d 732, 735 (9th Cir. 1997). Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, the court determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Vander v. United States Dep't of Justice*, 268 F. 3d 661, 663 (9th Cir. 2001).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256.

A party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Harper v. Wallingford*, 877 F. 2d 728, 731

1  (9th Cir. 1989). To establish the existence of a genuine issue of
2  material fact, the non-moving party must make an adequate showing
3  as to each element of the claim on which the non-moving party will
4  bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at
5  322-23. The opposing party may not rest on conclusory allegations
6  or mere assertions, *see Leer v. Murphy*, 844 F. 2d 628, 631 (9th
7  Cir. 1988), but must come forward with significant probative
8  evidence, *see Sanchez v. Vild*, 891 F. 2d 240, 242 (9th Cir. 1989).
9  The evidence set forth by the non-moving party must be sufficient,
10 taking the record as a whole, to allow a rational jury to find for
11 the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith*
12 *Radio Corp.*, 475 U.S. 574, 587 (1986). Where "the factual context
13 renders [the non-moving party's] claim implausible . . ., [that
14 party] must come forward with more persuasive evidence to support
15 [its] claim than would otherwise be necessary" to show that there
16 is a genuine issue for trial. *Matsushita Elec. Indus. Co.*, 475
17 U.S. at 587.
18      The materiality of facts is determined by looking to the
19 substantive law that defines the elements of the claim. *Nidds v.*
20 *Schindler Elevator Corp.*, 113 F. 3d 912, 916 (9th Cir. 1996).
21                     **II.  Eighth Amendment**
22      "It is undisputed that the treatment a prisoner receives in
23 prison and the conditions under which [the prisoner] is confined
24 are subject to scrutiny under the Eighth Amendment." *Helling v.*
25 *McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511
26 U.S. 825, 832 (1994).
27      Conditions of confinement may, consistent with the
28 Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452

U.S. 337, 347 (1981); *Osolinski v. Kane*, 92 F. 3d 934, 937 (9th Cir. 1996). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F. 2d 1080, 1107 (9th Cir. 1986); *see also Johnson v. Lewis*, 217 F. 3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F. 2d 1237, 1246 (9th Cir. 1982).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Cabrales v. County of Los Angeles*, 864 F. 2d 1454, 1462 (9th Cir. 1988) (subsequent history omitted); *Toussaint*, 801 F. 2d at 1107.

As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to inhumane conditions of confinement to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *see also Lopez v. Smith*, 203 F. 3d 1122, 1131 (9th Cir. 2000)(en banc). This rule applies to "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F. 2d 1237, 1253 (9th Cir. 1982). In deciding whether there has been deliberate indifference to an inmate's serious medical needs, the court need not defer to the judgment of prison doctors or administrators. *See Hunt v. Dental Dep't*, 865 F. 2d 198, 200 (9th Cir. 1989). State prison authorities have wide discretion regarding the nature and extent of medical treatment. *Jones v.*

*Johnson* 781 F. 2d 769, 771 (9th Cir. 1986).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *McGuckin v. Smith*, 974 F. 2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F. 3d 1133, 1136 (9th Cir. 1997)(en banc)(internal quotation omitted). The court should consider whether a reasonable doctor would think that the condition is worthy of comment, whether the condition significantly affects the prisoner's daily activities, and whether the condition is chronic and accompanied by substantial pain. *See Lopez,* 203 F. 3d at 1131-32.

Delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Lopez v. Smith*, 203 F. 3d 1122, 1131 (9th Cir. 2000)(en banc). If the prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See McGuckin v. Smith*, 974 F. 2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. V. Miller*, 104 F. 3d 1133 (9th Cir. 1997) (en banc).

Negligence does not suffice. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F. 2d 1332, 1334 (9th

Cir. 1990).

A difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. *Jackson v. McIntosh*, 90 F. 3d 330, 332 (9th Cir. 1996).

## Undisputed Facts

<u>Defendant Kennedy</u>

Defendant Criswell Kennedy, M.D., is a physician who contracted with the Washington Department of Corrections ("DOC,") to provide medical services from January 1, 2002 through September 26, 2003. (Ct. Rec. 34 at 2; Ex. 4 at 1.) Defendant Kennedy asserts that plaintiff failed to take his prescribed medications and refused to be admitted to the infirmary. (Ct. Rec. 34 at Ex. 4 pp. 2; 4-7.) He contends that because plaintiff fails to establish deliberate indifference to a serious medical need, Mr. Greening does not establish that the medical care he received amounted to cruel and unusual punishment under the Eighth Amendment.

Plaintiff suffers from Crohn's disease and chronic back pain. (Ct. Rec. 40 at 2; 7-8; Ct. Rec. 32 at 6; 8.) Plaintiff was treated for his Crohn's disease and back pain while at Airway Heights Correction Center (hereafter, AHCC,") by Criswell Kennedy, M.D. (Ct. Rec. 32 at 6-9.)

Medical records show that Dr. Kennedy first saw plaintiff at the AHCC on December 27, 2002. Mr. Greening complained of back pain and asked for an MRI. (Ct. Rec. 34; Ex. 4 at 1.) Dr. Kennedy believed "that an MRI would only be indicated if his pain was severe enough to consider surgery." *Id*. Rather than an MRI, Dr. Kennedy ordered an x-ray of plaintiff's back. (Ct. Rec. 34; Ex. 4

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 6

at 1-2.)

Dr. Kennedy saw Mr. Greening for complaints related to Crohn's disease (diarrhea and vomiting) at his next visit on January 2, 2003. (Ct. Rec. 34; Ex. 4 at 2-3.) Dr. Kennedy prescribed a prednisone taper: plaintiff was to take 20 milligrams a day for 14 days, then to taper down to 5 milligrams a day for 14 days by February 13, 2003. (Ct. Rec. 34; Ex. 4 at 3.)

Dr. Kennedy next saw Mr. Greening on February 3, 2003. He reviewed the x-ray of plaintiff's back with Mr. Greening. Dr. Kennedy stated that plaintiff

> "apparently had grade 1 spondylolisthesis L5 S1. In my view of the x-ray, there was minimal or no slip. I explained the pathology and pathogenesis (how pathology begins) of Mr. Greening's back condition, and I explained the long-term outlook of his condition.
>
> . . . Grade 1 is the mildest form of spondylolisthesis. [The condition] worsens the more strain a person puts on his back. Symptoms of grade 1 . . . may include back pain or the person may be symptom free. Treatment [of this condition] may include observation, restriction of activities that stress the spine, physical therapy, and anti-inflammatory or pain reducing medications. Symptoms . . . often abate after conservative treatment."

Ct. Rec. 34; Ex. 4 at 3-4.

Dr. Kennedy saw Mr. Greening next on February 28, 2003. He appeared to be in no distress, but he was requesting narcotics. Dr. Kennedy referred Mr. Greening to a proctologist, Dr. Colquhoun, for his input. Dr. Colquhoun reported to Dr. Kennedy on March 20, 2003, that he suspected that Mr. Greening was not very compliant about taking his medications. (Ct. Rec. 34; Ex. 4 at 4.)

Plaintiff did not see Dr. Kennedy in March or April. He next saw Dr. Kennedy on May 13, 2003. Dr. Kennedy noted that plaintiff was not compliant with taking his prednisone. Plaintiff said he

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

did not like the idea of taking prednisone continuously and wanted to try remicade. Dr. Kennedy did not prescribe remicade because Mr. Greening's "C-Reactive Protein was not that high" and prednisone had always seemed to work when plaintiff took his medication as prescribed. Dr. Kennedy told plaintiff that if his "disease state did not settle," he would ask Dr. Colquhoun or Dr. Gottlieb their opinions regarding the use of remicade. Dr. Kennedy prescribed another prednisone taper. (Ct. Rec. 34; Ex. 4 at 4-5.)

The next day Mr. Greening sent Dr. Kennedy a kite indicating that he did not want to have to go to the pill line every day to get his prednisone. Plaintiff asked to be allowed to take the pills on his own. Dr. Kennedy refused because he wanted to ensure that plaintiff was compliant with taking prednisone. (Ct. Rec. 34; Ex.4 at 5.)

Plaintiff then saw Dr. Kennedy about a month later on June 10, 2003. Mr. Greening wanted his neurontin increased. He wanted narcotics and remicade. Dr. Kennedy noted that plaintiff was convinced that his Crohn's disease was much worse than two specialists had determined. Dr. Kennedy did not prescribe remicade because Mr. Greening's C-Reactive Protein was not that high and the prednisone always seemed to work when taken properly.(Ct. Rec. 34; Ex. 4 at 4.) Dr. Kennedy did not recommend celebrex, as it would flare up plaintiff's Crohn's disease. However, Dr. Kennedy requested a referral to Steven Hong, M.D., a gastroenterologist, to evaluate the severity of Mr. Greening's Crohn's disease and to make recommendations for ongoing care. (Ct. Rec. 34; Ex. 4 at 5.)

Dr. Kennedy consulted with Dr. Hong on July 11, 2003. (Id.) Dr. Hong did not recommend remicade because when scarring is

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

present, as is the case with Mr. Greening, using the drug may result in bowel obstruction. In addition, remicade is less than 10% effective in smokers, and Mr. Greening smoked. Finally, remicade is fraught with allergic complications. (Ct. Rec. 34; Ex. 4 at 5-6.) Dr. Hong requested an enteroclysis (x-ray) of Mr. Greening's small bowel. On July 15, 2003, Dr. Kennedy requested the x-ray. (Ct. Rec. 34: Ex. 4 at 6.)

Plaintiff had an appointment scheduled with Dr. Kennedy for August 27, 2003, to review the x-ray results. When Mr. Greening learned the appointment was with Dr. Kennedy, he declined to be seen. (Id.)

Mr. Greening saw Dr. Kennedy on September 9, 2003. Dr. Kennedy had reports from the dietician that plaintiff was throwing up daily, as well as reports from the pharmacy that plaintiff was "non-compliant with his medications." Health Care Manager Debbie Clinton asked Dr. Kennedy to see Mr. Greening in order to place him in the infirmary so that his medication compliance could be monitored. (Id.) Mr. Greening refused to be admitted to the infirmary. (Ct. Rec. 34; Ex. 4 at 6-7.)

Three weeks later, on September 29, 2003, Mr. Greening was admitted to the infirmary for observation following his complaints of weight loss, daily vomiting and diarrhea. (Ct. Rec. 34; Ex. 2 at Att. DD.) Upon admission he weighed 123 pounds. (Ct. Rec. 34; Ex. 2 at Att. EE.) Mr. Greening admitted that he received no treatment except monitoring while in the infirmary and that his Crohn's disease began going into remission at that time. (Ct. Rec. 34; Ex. 3 at Att. A, p. 25.)

On October 3, 2003, Dr. Cundiff examined plaintiff in the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT   - 9

infirmary. (Ct. Rec. 34; Ex. 2 at Att. FF.) Dr. Cundiff noted that Mr. Greening had not vomited or had diarrhea since he entered the infirmary. On October 6, 2003, Mr. Greening asked when he could get out of the infirmary. It was again noted that plaintiff had not vomited or had diarrhea since he entered the infirmary. According to the medical record, Mr. Greening's Crohn's disease was in remission. (Ct. Rec 34; Ex. 2, Att. FF.) Plaintiff later admitted that he had no vomiting or diarrhea while in the infirmary. (Ct. Rec. 34; Ex. 3, Att. A at 27.) The next day plaintiff was released from the infirmary. His final diagnosis was Crohn's disease, stable in remission. While in the infirmary, Mr. Greening was closely monitored, including oversight of calorie counts and being weighed daily. Plaintiff refused to take his mezalamine but otherwise complied with his prescribed medications. He gained six pounds while in the infirmary. (Ct. Rec. 34; Ex. 2, Att. GG and HH.) On November 12, 2003, Mr. Greening said his problem was "in remission." (Ct. Rec. 34; Ex. 2 at Att. B.) Currently Mr. Greening's Crohn's disease is stable and he is taking mesalamine. (Ct. Rec. 34; Ex. 3, Att. A at 28.)

Mr. Greening admitted that he did not know how his back condition could have been treated differently, other than he believed that he should been given other pain relievers and an MRI. (Ct. Rec. 34; Ex. 3, Att. A at 41.)

<u>Defendant Clinton</u>

Defendant Debbie Clinton, as the Health Care Manager 2 of AHCC throughout 2002 and 2003, provided direction and oversight to the medical care providers at Airway Heights. (Ct. Rec. 34; Ex. 2 at 1.) She does not generally provide medical treatment for

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

offenders. (Id.)

Mr. Greening disagreed with Clinton's treatment orders for his back pain, specifically, Clinton's order that Mr. Greening be provided with a hot water bottle and tylenol. (Ct. Rec. 40 at 10.) In plaintiff's exhibit 43 Clinton states:

"In addition to ordering a hot water bottle for Mr. Greening, I encouraged him to continue with physical therapy, I scheduled an appointment with Dr. Kennedy for him, ordered Extra-Strength Tylenol for him to take three times a day as needed, I ordered multi-vitamins for him, and I ordered him lightweight boots." (Plaintiff's Ex. 43 at Answer to Interrogatory No. 7.)

Mr. Greening acknowledges that he asked for the hot water bottle and the boots. (Plaintiff's Ex. 43 at Interrogatory No. 7.) The only request that was denied, according to Mr. Greening's Interrogatory No. 7, was a referral to see a specialist. (Id.)

In approximately July of 2003 plaintiff filed a grievance alleging that his medical treatment was inappropriate. (Ct. Rec. 42 Ex. 28.) Health Manager Clinton investigated plaintiff's appeal to level II and found Dr. Kennedy's treatment was appropriate. (Id.) Mr. Greening filed a total of seven grievances related to his dissatisfaction with his medical treatment. (Ct. Rec. 34; Ex. 5 at 2.)

Dr. Kennedy provided medical treatment to Mr. Greening on a regular basis, and on occasion consulted with experts regarding plaintiff's care. It is undisputed in the record that when plaintiff took his medications and meal supplements as directed, his Crohn's disease was well managed. With respect to his back pain, it is undisputed that Mr. Greening suffers from the mildest

form of spondylothesis, and that he was given various types of treatment for this condition, including hot water bottles, lighter weight boots, physical therapy, and pain relievers. Other than desiring different pain relievers, an MRI, and referral to a specialist, Mr. Greening does not indicate what additional measures he feels that the defendants should have taken with respect to his medical care. As Clinton pointed out, the February of 2003 decision that an MRI was not medically necessary was made by the Utilization Review Committee, not by Clinton. (Ex. 43, Interrogatory No. 3 and Response.)

To show deliberate indifference, plaintiff must first establish a purposeful act or failure to act by Dr. Kennedy. Dr. Kennedy's initial recommendation against an MRI is a purposeful act but it was not one indifferent to the medical needs of the plaintiff. Dr. Kennedy opined that an MRI is only appropriate for a patient whose pain dictates surgery – and this was not Mr. Greening's level of pain. With respect to Clinton, it was the URC who found in February of 2003 that an MRI was not medically necessary – not Clinton. Mr. Greening acknowledges that Clinton authorized everything he requested (and more) for his back pain except a referral to a specialist, an MRI and different pain medication. The fact that Mr. Greening believes that a different course of treatment should have been given him does not amount to deliberate indifference on the part of the defendants as a matter of law. In addition, a careful review of the record in this case does not reveal a factual basis for Mr. Greening's claims against the defendants. The plaintiff's medical needs were attended to and he did receive treatment. The record further reveals that the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

dispute arose because plaintiff was unhappy with some of that treatment and believed that a different course of treatment was more appropriate.

Mr. Greening alleges that he repeatedly requested an effective course of treatment and that Dr. Kennedy failed to provide such effective treatment and denied plaintiff's requests for certain medication. Such a disagreement is insufficient to sustain Mr. Greening's Eighth Amendment claims.

Based on the undisputed facts in this record, plaintiff does not establish legally or factually extreme indifference on the part of either of the defendants.

There is no medical evidence of any serious medical need for any measures beyond those undertaken. All of the medical evidence in the record before this court shows that the plaintiff was given all care medically necessary. Uncontradicted evidence establishes that plaintiff's Crohn's disease went into stable remission when his medications were monitored.

Plaintiff must also show a resulting harm. As has already been noted the evidence is clear and undisputed that there was no injury, deterioration of the condition, or pain resulting from the selected course of treatment. Because plaintiff fails to show harm resulting from Dr. Kennedy's treatment, or Ms. Clinton's oversight, he cannot establish that the defendants treated him with extreme indifference.

Examined in the light most favorable to the non-moving party, and giving the plaintiff the benefit of the doubt, plaintiff's claims against Dr. Kennedy and Clinton would still fail because he has not shown deliberate indifference.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 13

### III. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. (Ct. Rec. 32 at 18.) To establish a 1983 claim requires: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a person (4) acting under color of state law. *Crumpton v. Gates*, 947 F. 2d 1418, 1420 (9th Cir. 1991).

Public officials are immune from liability for section 1983 damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Settlegoode v. Portland Public Schools*, 371 F. 3d 503, 512-13 (9th Cir. 2004), citing *Harlow v Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court held that this inquiry must be made in two successive steps: The court must first determine whether "the facts alleged shows the officer's conduct violated a constitutional right:; "the next, sequential step is to ask whether the right was clearly established" – an inquiry that "must be undertaken in light of the specific context of the case." *Settlegoode*, at 513 n. 7, citing *Saucier*, 533 U.S. at 201.

As defendants correctly point out, plaintiff fails to establish a violation of any constitutional right because he has not established actual or potential injury nor deliberate indifference. (Ct. Rec. 32 at 4-5.)

In this case the court need not decide whether defendants are entitled to qualified immunity because, as noted, plaintiff has failed to establish the first prerequisite of his civil rights claim: a constitutional violation.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT  - 14

The court finds that plaintiff fails to set forth specific facts showing that there is a genuine issue of material fact for trial.

Accordingly,

Defendant Kennedy and Clinton's Motion for Summary Judgment **(Ct. Rec. 31)** is **GRANTED.**

**IT IS SO ORDERED**. The District Court Executive is hereby directed to enter this Order, enter judgment for defendants and furnish copies to counsel.

**DATED** this 5th day of August, 2005.


s/ Michael W. Leavitt

MICHAEL W. LEAVITT
United States Magistrate Judge